**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FEDERAL BUREAU OF INVESTIGATION, )<br>)<br>Defendant. )<br>) | Civ. A. No. 20-206-KBJ |

## JOINT STATUS REPORT

Plaintiff, Gun Owners of America, Inc. ("Gun Owners"), and Defendant, Federal Bureau of Investigation ("FBI"), submit this joint status report pursuant to the Court's May 5, 2020, Minute Order. On March 27, 2020, in light of the ongoing pandemic, and pursuant to the Chief Judge's Standing Order addressing the impact of the pandemic, this Court signed an extending the standard period of time that it affords parties to submit proposed schedules in FOIA cases following submission of an answer and calling for a proposed processing schedule on or before April 20, 2020. The Court indicated that the Court would freely grant extensions of this deadline should the need arise.

On April 20, 2020, after consulting with Gun Owners, FBI filed an Unopposed Motion to Stay Proceedings seeking a stay of this matter in lieu of the joint status report called for because of the FBI's Records Office ("RIDS") responsible for processing FOIA requests was shut down until further notice for the reasons detailed in the motion and associated declaration. Because of the uncertainty over the timing of RIDS' resumption of FOIA operations, FBI requested an opportunity to submit a report on the first Monday that is two weeks after the resumption of RIDS normal operations. The

motion indicated that, barring unforeseen circumstances, the report would include a request that the stay be lifted.

As the Parties are not in agreement about how to proceed, each writes separately to set forth its position. Because it was Defendant's motion that gave rise to the stay of the matter and because Defendant is responsible for the foregoing introduction, Defendant appends its position first, followed by Plaintiff's.

## DEFENDANT'S POSITION

The COVID-19 pandemic has cause a great many dislocations. Aware, at the very least, that none of us could say with certainty what a return to work would look like – especially taking into account social distancing measures and considerations for keeping public servants safe – the FBI's Motion for Stay tied a lifting of the stay to resumption of normal operations. And, even then, uncertain about the length of time that would have elapsed and what impact the time away would have had on the workload to be resumed upon a reopening at full capacity, the motion sought some additional time ot account for, in essence, ramping up.

RIDS staff returned to work and resumed FOIA operations in a limited fashion consistent with social distancing principles on April 29, 2020 – *less than one-third* of normal capacity. *See* Decl. of David M. Hardy ("Hardy Decl."), ¶ 17, attached as Exhibit 1. RIDS increased staffing levels to a limited degree effective May 26, 2020, but RIDS continues to operate at significantly reduced capacity compared to its normal operations – estimated at no greater than *one-half* its pre-pandemic levels.

Since RIDS returned on April 29, 2020, RIDS has been assessing the work that accumulated during the time RIDS staff was restricted from being in the office, and

adjusting internal deadlines to deal with the backlog of work.  This is particularly true given that there was a period of adjustment and uncertainty when RIDS employees first returned to work under the new conditions implemented to ensure health and safety, and it is unknown what impact the May 26 increase in staffing levels may have on RIDS's work.  RIDS is continuing its search for records in this case but efforts are delayed due to RIDS' limited staffing levels and because of the need to consult with other components that also have limited staffing or are not in the office due to health and safety measures implemented due to COVID-19.

Neither the resumption of work commenced on April 29, nor the expanded operations begun only a week ago, amount to the "normal operations" the motion envisioned to trigger a lifting of the stay.  Because the circumstances that obtain – even since last week – continue to fall within the zone of activity where maintenance of the stay was assumed, undersigned counsel has not discussed with FBI any alternative.  And, even given as little as counsel knows about the capacity of FBI to sustain a lifting of the stay in this case, the form of jumping of the queue that would surely be necessary to to give Gun Owners the remarkable priority it believes it is entitled to receive would be breathtakingly unfair to other requesters who have been waiting longer.

Specifically, as far as counsel can tell, the schedule Gun Owners ask for is not only entirely infeasible under the present circumstances; it would not be feasible even if FBI were *fully staffed*.  Moreover, because FBI has not completed a search for responsive documents yet, it would impossible to begin to propose page counts for processing at this stage.  Only once the search is complete would we be able to propose a processing schedule.  Fairly read, the Motion to Stay envisioned a different and more robust

resumption of operations triggering a lifting of the stay. In the event that the Court wishes to consider a lifting of the stay before RIDS resumes operations as normal levels, FBI requests an opportunity to first provide the Court and Plaintiff with an update on July 1, 2020 on the status of the search in this case and a considered assessment of what is possible under the current circumstances.

## PLAINTIFF'S POSITION

### A. Background.

On October 4, 2019, Plaintiff submitted the FOIA request at issue to Defendant. *See* Compl. ¶ 5. On January 13, 2020, the FBI replied and said that it would take at least 4.4 years to process Plaintiff's request. *Id.* ¶ 11. On January 27, 2020, Plaintiff filed this action, seeking an order to compel the FBI to process Plaintiff's request and to produce documents.

On April 20, 2020, Defendant filed a Motion to Stay Proceedings (ECF No. 9) with this Court, seeking to indefinitely stay this case, pending the FBI's then-complete shutdown of its FOIA offices which began on March 17, 2020, due to the COVID-19 pandemic. At the time, Plaintiff did not object to a temporary stay, but asked that any stay not be open-ended, and that the issue be revisited in 30 days. On May 5, 2020, the Court stayed the case, ordering the parties to file a joint status report on June 1, 2020, "contain[ing] a proposed schedule for further proceedings."

Plaintiff's counsel has now learned that the FBI's FOIA office returned to work on a rotating-shift (1/3 of staff each day) on April 29, 2020.[1] *See* Declaration of David

---

[1] Counsel for Defendant has not confirmed whether the partial 1/3 capacity status that began April 29, 2020 is the current state of the FBI's FOIA office, or if operations have since resumed to a greater degree. Nevertheless, it does appear that the FBI's FOIA department is at least partially operational.

M. Hardy ¶ 18.  That information was not communicated to Plaintiff when the partial re-opening occurred.   Despite the partial re-opening, Defendant's position continues to be that this case should not proceed until its staff returns to "normal operations," with no estimate as to when that may be.

Plaintiff's position is that its request is now nearly eight months old and, based on other developments, has become more time sensitive for reasons set out below.  Defendant's office shutdown (first total, now partial) is nearing 11 weeks.  However, since its FOIA offices are at least partially open, Defendant is capable of processing Plaintiff's request, and Plaintiffs urge that Defendant should be ordered to do so.

      **B.**      **Plaintiff's Request Has Now Become Time Sensitive, and Should Not Be Subjected to Indefinite Delay.**

Plaintiff's FOIA request in this case involves matters of public importance that are relevant *now*, not at some later date when (or if) the FBI decides it is again ready to begin processing FOIA requests.  Plaintiff's FOIA request seeks records about a FBI form "purporting to allow otherwise eligible persons to report themselves to the federal government as ineligible to purchase or possess firearms."  Compl. ¶ 6.  Plaintiff's request specifically asks for, among other things, "records regarding the process by which the names of persons who sign this document are entered to the" National Instant Criminal Background Check System ("NICS").  *Id.* ¶ 7(e).

According to 28 C.F.R.§ 25.1, the purpose of the NICS system is to house "information as to whether the transfer of a firearm to any person who is not licensed ... would be in violation of Federal or state law."  Federal law clearly defines certain limited classes of persons who are ineligible to purchase or possess firearms.  *See* 18 U.S.C. §

922(d) and (g).  None of those categories allows for a person to sign a form and be added to the system "voluntarily" — likely after being threatened or coerced by federal authorities.

The production of these records is *relevant to current events, including possible forthcoming litigation*.  The Commonwealth of Virginia recently enacted a statute creating a "Voluntary Do Not Sell List" (S.B. 436) which, similarly to the FBI's form, permits a person to voluntarily to add himself to a list "that prohibits the possession, transportation, and sale of firearms to any person who voluntarily registers himself to be enrolled into the List."[2]  The statute requires that, "[u]pon enrolling a person into the List, the Department **shall forward a person's eligibility to purchase, possess, or transport a firearm to the National Instant Criminal Background Check System**."  Section 52-52 (emphasis added).  The Virginia statute at issue takes effect on July 1, 2020.

Plaintiff's request in this case seeks records with respect to how persons who "voluntarily" *declare* themselves to be prohibited persons, yet are not *actually* prohibited persons under any law, are entered into and treated by the NICS system.  Information gained from this FOIA request is being sought not only to better inform public understanding[3] about both the FBI's NICS system, but also may be used to pursue potential litigation — including not only for a potential challenge to the Commonwealth of Virginia's new statutory enactment, but also possibly to challenge the FBI's administrative addition of non-prohibited persons to the NICS system.

---

[2]  https://lis.virginia.gov/cgi-bin/legp604.exe?201+sum+SB436
[3]  Plaintiff GOA routinely publishes the results of information obtained from its FOIA requests.  *See., e.g.*, https://www.ammoland.com/2019/11/atf-firearms-industry-operations-manual-obtained-via-goa-foia-request/#axzz6O7qUQgps

As noted above, the FBI's April 24, 2020 declaration indicates that its FOIA operations resumed 1/3 staffing, on a rotating basis, as of April 29, 2020. That means that Defendant now should be capable of processing Plaintiff's FOIA request. Indeed, Defendant makes no allegation that it is not capable of doing so. A continued stay in this case would hinder Plaintiff's ability to potentially uncover information critical to public understanding of relevant and time sensitive issues, and pertinent to possible future legal challenges.

C. **Plaintiff's Proposed Schedule**.

Pursuant to the Court's May 5, 2020 minute order, Plaintiff proposes the following production schedule:

1. a **deadline of June 15, 2020**, for Defendant to conduct searches for potentially responsive documents and report to the Court on the number of records at issue;

2. a **deadline of June 30, 2020**, for Defendant to process and produce all non exempt, responsive records to Plaintiff, together with a draft Vaughn Index of records or portions of records being withheld under claim of exemption; and

3. a **deadline of July 31, 2020**, giving Plaintiff time to review Defendant's productions, and the parties time to confer and to file an a further Joint Status Report, indicating whether there are outstanding issues to be resolved and, if so, proposing a schedule to govern further proceedings.

Dated: June 1, 2020

Respectfully submitted,

ROBERT JEFFREY OLSON
WILLIAM J. OLSON, PC
370 Maple Avenue West Suite 4
Vienna , VA  22180
(703) 356-5070
Email:Rob@wjopc.Com

MICHAEL R. SHERWIN
Acting United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092

7

Civil Chief

By: /s *John Moustakas*
John Moustakas, D.C. Bar #442076
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2518

*Counsel for Defendant*