# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GUN OWNERS OF AMERICA, INC.,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Civ. A. No. 20-206-KBJ |
| | ) | |
| **FEDERAL BUREAU OF INVESTIGATION**, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

## JOINT STATUS REPORT

Plaintiff, Gun Owners of America, Inc. ("Gun Owners"), and Defendant, Federal Bureau of Investigation ("FBI"), submit this joint status report pursuant to the Court's July 30, 2020, Minute Order.

The National Instant Criminal Background Check System ("NICS") is mandated by the Brady Handgun Violence Prevention Act ("Brady Act") of 1993, Pub. L. 103-159. The NICS was established for Federal Firearms Licensees to contact by telephone, or other electronic means, for information to be supplied immediately on whether the transfer of a firearm would be in violation of certain federal or state laws.   In short, NICS is a national system that checks available records on persons who may be disqualified from receiving firearms and is undertaken at the point of sale or transfer.

When a NICS background check is initiated, it checks three different databases to determine if there is a match that would preclude the transfer.  One of those databases is the NICS Index, which includes information contributed by Federal and state agencies identifying persons prohibited from possessing firearms who are not included in the other two databases (which more generally track those who have come in contact with the

criminal justice system), including individuals with a disqualifying mental health history -- the category relevant to this request.  The sole focus of Gun Owners' FOIA request relates to a document alleged to be one source of records contributing mental health information to the NICS Index: the NICS Indices Self-Submission Form, a copy of which is attached to its Complaint.

Gun Owners seeks through FOIA a copy of the NICS Indices Self-Submission Form, and a series of categories of records relating to the form, as well as either the number of unique individuals brought into the NICS Indices by this method or copies of all signed Self-Submission forms, with PII redacted.

### **FBI's Position**

The FBI conducted a search for responsive documents on a timetable consistent with its expectation that RIDS would complete the search by July 22, 2020.  To date, a number of potentially responsive documents have been identified, but RIDS has yet to complete its search.  Discussions with other FBI offices that provided responsive records prompted RIDS to conduct supplemental searches to insure all locations reasonably expected to contain potentially responsive records were properly searched, which it reasonably expects to complete by  August 31, 2020.  At that point, the FBI will provide Gun Owners an estimated page count and proposed processing schedule.

Consequently, in order to ensure adequate time to meet and confer as to processing or any other matters raised by the results (and account for undersigned counsel's very limited availability during the first week of September), FBI requests the opportunity to provide the next joint status report by no later than September 11,  2020.

**Plaintiff's Position**

The FOIA request in this case was submitted on October 4, 2019, and Plaintiff's complaint was filed on January 27, 2020.  On April 20, 2020, the FBI moved to stay proceedings (ECF #9) based on its entirely voluntary shutdown of its FOIA offices, and asked the Court to give the FBI complete control over when the case would proceed.  On May 5, 2020, the Court granted the FBI additional time, but asked for another status report be filed with "a proposed schedule for further proceedings."  Meanwhile, the FBI returned to work (at 1/3 capacity) on April 29, 2020, but did not advise either Plaintiff or the Court.

On June 1, 2020, the parties filed their status report (ECF #11), with the FBI claiming that it still should not be required to do anything until it resumed "normal operations," and with Plaintiff asking that the FBI be ordered to process its request. Before the Court ruled, the FBI filed its own status report on June 22, 2020 (ECF #12), reporting that it had resumed "normal operations" a full two weeks earlier on June 8, 2020, stating that it would complete its searches by July 22, 2020, and proposing that the parties file another JSR on July 29, 2020.

On June 23, 2020, the Court gave the FBI the further extension it sought, ordering the parties to submit a status report on July 29, 2020 with a "proposed schedule for further proceedings."

However, contrary to its representations made in its on June 22, 2020 status report, the FBI did not complete its searches by July 22, 2020.  Neither did the FBI did provide any update to Plaintiff, either about the results of its alleged initial search, or about its alleged plans for "supplemental searches."

3

Instead, the FBI is back again, reporting virtually no progress, speaking in vague generalities, and asking the Court for an additional 40 days to search for records, with a further 11 days for the parties to file yet another status report. If past is prologue, that deadline may not be honored either.[1] Even now, the FBI only "reasonably expects" to complete its searches in its new time frame.

Plaintiff again requests that the Court order the FBI to complete its searches on or before a near date certain, and to process and provide non-exempt responsive documents to Plaintiff on or before a date certain shortly thereafter.

## **FBI's Response to Gun Owners' Position**

Gun Owners' Position continues to distort. First, FBI's decision to shutdown RIDS was not some form of unnecessary and quixotic indulgence; every court in this District asked to do so – including this Court, in this case – approved stays and/or extensions based on that propriety of that shutdown. Indeed, local stay-at-home orders compelled it.

Second, there was nothing untoward about FBI's June 22, 2020 status report – neither its timing ("[b]efore the Court ruled" on the June 1 joint status report), nor its author ("FBI filed its own status report"). Since the April 20, 2020 request for a stay was granted, FBI has promised to file its own status report "on the first Monday that is two weeks after

---

[1] Interestingly, Plaintiff has another FOIA case pending against this Defendant, in front of this Court (20-cv-1385). The FOIA request in that case was submitted 5.5 months after this request, and the complaint was filed 4 months after the one in this case. Moreover, the records request in that case is far more complex than the simple one here. Yet in 20-cv-1385, the FBI never asked for any extension, has already completed its searches for records (within a month of filing its answer), and the parties have already agreed to a production schedule. It does not make sense why the FBI was able to accomplish that work in 20-cv-1385, but has been unable to accomplish anything here.

[RIDS'] resumption of *normal operations*."  See Proposed Order attached to April 20, 2020, Motion for Stay (ECF No. 12).  June 22 was the applicable "first Monday."

Third, FBI has not broken its word to complete its searches by July 22, 2020.  As it explained in its June 22, 2020, status report, "RIDS *anticipate[d]* completing its searches by July 22, 2020."  For the reasons set forth above, new searches were not completed by that date.

Last, Gun Owners' final distortion is a critical (but misleading) contrast between this and another case involving the same parties and similar requests – both before this Court.  See *supra* n.1.  Bewildered how its other FOIA case in this Court – initiated *5 months later* than this one – could have produced a production schedule *1 month earlier*, Gun Owners ignores what it has already been told:    Civ. A. No. 20-206 (this case) was filed *before RIDS shut down* on account of COVID-19 and Civ. A. No. 20-1385 (its other case) was filed *after RIDS became fully operational again*.  For all relevant purposes, these cases started at the very same time:  on June 8, 2020, when RIDS returned to normal operations.  With the one-month difference in timing explained above, any contrast is irrelevant.

| | |
|---|---|
| Dated:  August 4, 2020 | Respectfully submitted,<br>MICHAEL R. SHERWIN<br>Acting United States Attorney |
| */s/  Robert J. Olson*<br>ROBERT JEFFREY OLSON<br>WILLIAM J. OLSON, PC<br>370 Maple Avenue West Suite 4<br>Vienna , VA  22180<br>(703) 356-5070<br>Email:Rob@wjopc.Com | DANIEL F. VAN HORN, D.C. Bar # 924092<br>Civil Chief<br><br>By: */s  John Moustakas*<br>John Moustakas, D.C. Bar #442076<br>555 4th Street, N.W. - Civil Division<br>Washington, D.C. 20530<br>(202) 252-2518 |
| *Counsel for Plaintiff* | *Counsel for Defendant* |